RICHARDSON *et al.*, administrators, *v.* ADAMS *et al.*

There was not sufficient evidence of mental incapacity to authorize the jury to set aside voluntary deeds made by the grantor to certain of his children and grandchildren, there being no evidence of fraud practised or undue influence exerted upon him.

Argued March 12, — Decided April 6, 1900.

Equitable petition. Before Judge Reese. Hart superior court. March term, 1899.

*J. H. Skelton, P. P. Proffitt,* and *A. G. McCurry,* for plaintiffs.

*O. C. Brown, J. P. Roberts,* and *W. D. Tutt,* for defendants.

SIMMONS, C. J. Teasley owned about 500 acres of land in Hart county, Georgia. In the year 1889 he divided up this land and conveyed it by eight voluntary deeds to his wife and certain of his children, grandchildren, and great-grandchildren. He

was at that time an old man, seventy-nine years of age. He was weak and infirm, physically and mentally. He died about two years later. His administrators filed an equitable petition to set aside and cancel these deeds, on the ground that the grantor was at the time of their execution incapable of making them. On the trial of the case, after the evidence for the plaintiffs was closed, the judge, on motion, granted a nonsuit. To this plaintiffs excepted.

We have carefully read the evidence introduced by the plaintiffs, and have reached the conclusion that the trial judge was right in granting a nonsuit. It would be useless and unprofitable to go into the details of the evidence of each witness and the reasons each gave for his opinion as to the capacity of the grantor to make the deeds. There was no evidence which showed that the grantor was so wanting in legal capacity as to render the conveyances invalid.. None of it showed that the grantor was non compos mentis at the time; that he did not know what he was doing; that he did not know the objects of his bounty; or that he did not know the property he was giving away. It did appear clearly that he had summoned a surveyor and some of his friends to run the lines of the land he intended to convey to the grantees, and that he had the land so divided up as to give to his wife 100 acres; to one of his daughters 81.4 acres; to another 62.8 acres; to two of his grandchildren 77 acres; to a grandson and a great-grandson 65 acres; to the children of one of his sons 33 acres; to the children of one of his daughters 36 acres; to the children of another 44 acres. This showed that he had mental capacity sufficient to make the calculations needed, and to divide up his land among the grantees as above stated. Besides, the evidence showed that he was on the land the day the deeds were made, and that he pointed out to the surveyor and others the lines and corners of his land. While the petition alleged fraud and undue influence, these allegations seem to have been abandoned, for there was not a scintilla of evidence tending to show either.

A deed will not be set aside because of eccentricity or weakness of intellect. "If the grantor has sufficient mental ability to comprehend what he is doing, and to understand the nature

of his act, his deed must be deemed that of a sane person." 1 Devlin, Deeds (2d ed.), § 69. It must be remembered, too, that these were voluntary deeds, made by a very old man in feeble health to certain of his children, grandchildren, and great-grandchildren, — a man whose increasing age and diminishing strength doubtless warned him that his end was near, — and that he might have wished to thus convey his property and so become in a sense the administrator of his own estate. Speaking for myself, I think that in such a case the mental capacity of the grantor should be measured by the rule laid down in the books as applying in cases of wills. While it takes a higher order of understanding to make a deed or other contract than to make a will, it is largely because in the case of a contract there must be a consideration and each party must have sufficient capacity to know the value of the consideration moving to each. In the deeds in the present case the consideration was the natural love and affection of the grantor for the grantees, and the conveyances served as a sort of testamentary disposition of the property. Taking the evidence as a whole, we are satisfied that the grantor had sufficient mental capacity to make these deeds. Certainly the evidence did not come up to the rule laid down by this court in the case of *Maddox* v. *Simmons, 31 Ga. 512.* In that case the contract was one of bargain and sale, the grantor giving certain property for a certain consideration. See also, for a discussion of the subject, 1 Devlin, Deeds (2d ed.), § 67 et seq. *Judgment affirmed. All the Justices concurring.*